UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH NELSON and
ALBERT THROWER,
    Plaintiffs,
    v.

ROBERT SCOTT, *et al.*,
    Defendants.
_____/

Case No. 23-11597

Brandy R. McMillion
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (ECF No. 35)

## I.    PROCEDURAL HISTORY

Plaintiffs Elizabeth Nelson and Albert Thrower filed this case on July 5, 2023. (ECF No. 1). The operative amended complaint was filed on August 25, 2023. (ECF No. 29). Defendants Badalamente, Cummins, Dwyer, Fourts, Gauss, Kijewski, Lipa, Michaels, Murph, Reichling, Ross, Scott, Trembath, Warack, the City of Warren, and City of Warren zoning department moved to dismiss the amended complaint and for summary judgment. (ECF No. 35). The motion is fully briefed. This matter was referred to the undersigned for all pretrial matters. (ECF No. 44).

For the reasons discussed below, the undersigned recommends that the motion to dismiss be **GRANTED**.

## II.   AMENDED COMPLAINT ALLEGATIONS

This lawsuit is about a search of Plaintiffs' residential building located in Warren, Michigan, and about the City of Warren towing Nelson's cars that were parked on the property.  At the time of the alleged events, Thrower was trying to evict tenant Kimberly Branson, who occupied the upper level of the Warren property, but the eviction was stayed beginning in March 2020 because of the Covid-19 pandemic.  (ECF  No. 29, PageID.87, 91).  Thrower told Branson that she was only allowed in the basement for emergency purposes.  While they primarily resided in Ohio, Nelson and Thrower used the basement as their residence  (*Id.* at PageID.89).  On March 11, 2020, Branson used her key to the basement and allowed Defendants Scott, Cummins, Gauss, Badalemente, Kijewski, Murphy, Warack, Lipa, and Ghaham to enter it.  These Defendants did not have a search warrant and despite the ongoing pandemic did not wear a mask inside the premises.  (*Id.* at PageID.90).  Plaintiffs assert that Branson allowed the Defendants in the basement because she was a "secret informant" for the City of Warren.  (*Id.* at PageID.90).  Plaintiffs learned of Defendants' search of the residence on April 23, 2020.[1]  (*Id.* at PageID.91).

---

[1] Plaintiff's wrote "4/23."  Read in context, they did not mean that they found out about the search during April 2023; rather, they became aware on April 23, 2020.

On July 7, 2021, Judge Chumra of the 37th District Court issued a warrant to tow vehicles on Plaintiff's property.  The warrant authorized towing of "inoperable vehicles."  (*Id.* at PageID.93).  Two vehicles were towed from the property that day, but according to Plaintiffs they were towed before Judge Chumra's order was issued.  The same day Defendant Scott wrote a ticket for having an unsafe structure for human habitation at Plaintiff's and Branson's Warren residence.  (*Id.*).  Some Defendants removed Plaintiffs' property that included grills, wood, and drainage piping, and charged Plaintiffs $687.50 for "illegally" taking that property.  (*Id.* at PageID.94).

On July 8, 2021, Thrower went to the tow yard to retrieve the vehicles. Defendant Hertz stalled Thrower while Defendant Scott was on his way to the tow yard.  When Scott arrived, he threw Thrower against the wall and conducted a citizen's arrest for the unsafe structure-for-habitation ticket.  (*Id.* at PageID.94-95). While restraining him, Scott searched through Thrower's bag.  (*Id.* at PageID.95). Thrower alleges that Scott lacked authority to conduct a citizen's arrest for a misdemeanor charge.  Warren police then arrived but did not arrest Scott for kidnapping; instead they arrested Thrower on the misdemeanor housing violation. (*Id.*).

The claims are as follows.  Claim One alleges that Scott, Gauss, Cummins, Badalamente, Kijewski, Lipa, Murphy, Warack, Michaels, Trembeth, and Ross

violated the Fourth and Fourteenth Amendments by illegally entering the basement apartment without a search warrant or other authority.  (*Id.* at PageID.97).  In Claim Two, Plaintiffs assert that those same Defendants entered the property without wearing masks or gloves, thereby exposing Plaintiffs to a "state created risk" of contracting Covid-19 in violation of the Fourth, Fifth, and Fourteenth Amendments.  (*Id.*).  Claim Three alleges that towing the vehicles on July 7, 2021, violated the Fourth, Fifth, and Fourteenth Amendments because both cars were operable and Plaintiffs were not given notice and an opportunity to be heard before the cars were taken.  (*Id.* at PageID.97-98).  Claim Four says that Scott violated the Constitution by conducting a citizen's arrest, restraining Thrower and spitting on him which exposed Thrower to Covid-19.  (*Id.* at PageID.98).  Claim Five alleges that Scott's actions during the alleged arrest constituted assault, battery, and kidnapping.  (*Id.*).  In Claim Six, Plaintiffs stated that the Defendants' actions as stated in the complaint exposed them to a state created risk because they had to retrieve the towed vehicles during a pandemic.  (*Id.* at PageID.99).  Finally, in Count Seven, Plaintiffs assert that "Per facts rewritten herein intentional infliction of emotional distress."  (*Id.*).

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Governing Standards

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

"[C]ourts may not rewrite a complaint to include claims that were never presented

... nor may courts construct the Plaintiff's legal arguments for him.  Neither may

the Court 'conjure up unpled allegations[.]'"  *Rogers v. Detroit Police Dept.*, 595

F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and

recommendation of Binder, M.J.); *see also, Evans v. Mercedes Benz Fin. Servs.,*

*LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn,

J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se*

plaintiff must comply with basic pleading requirements, including Rule

12(b)(6).").

     B.   <u>Discussion</u>

Some background on Plaintiffs' prior litigation is necessary before

addressing Defendants' motion.  Plaintiffs sued many of the same defendants in a

2022 lawsuit challenging the towing of four vehicles during May 2020 from the

same property.  *See* Case No. 22-10918.  That case was dismissed following

motions to dismiss and for summary judgment being granted.  Defendants here

point to the similarity of the claims in the cases to argue that this lawsuit should

also be dismissed.  (ECF No. 35).  Some claims are similar, such as Plaintiffs'

claims that defendants exposed them to Covid-19.  But the claims are different

enough that the undersigned does not rely on the 2022 case here.

     1.   Thrower's Pro Se Status

At the outset of their brief, Defendants assert that the Court should not give Thrower's complaint the same latitude it would other *pro se* complaints because Thrower is an experienced litigator having filed many lawsuits here and in Ohio, and in some courts is banned from filing lawsuits without leave because of the frivolous and vexatious nature of his claims.  (ECF No. 35, PageID.173-75).

The undersigned will evaluate the complaint under the Fed. R. Civ. P. 12(b)(6) standards and will give due consideration to the fact that Plaintiffs are unrepresented.  This means that that undersigned holds the complaint to less stringent standards, but it does not mean that the undersigned will plead facts for the Plaintiffs to support conclusory allegations.

### 2.   Covid-19 and State Created Danger

Defendants argue that the claims related to exposing Plaintiffs to Covid-19, by entering the residence without masks and forcing them to go the tow yard during the pandemic, should be dismissed for failure to state a "state created danger" claim.  The undersigned agrees that the claims should be dismissed for two reasons.

First, Defendants are correct that Plaintiffs did not state a viable claim.  The "state created danger" doctrine is a substantive due process claim that can provide for holding a government actor liable for injury to a private person.  To succeed on the claim, the plaintiff must show "(1) an affirmative act by the governmental actor

either created or increased the risk that the plaintiff would be exposed to the injurious conduct of the private person; (2) the governmental actor's act especially endangered the plaintiff or a small class of which the plaintiff was a member; and (3) the governmental actor had the requisite degree of culpability." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted).  Plaintiffs' claims cannot succeed because their allegations do not show that any of the Defendants especially endangered their safety.  And importantly, as Defendants note, they did not create the pandemic and the dangers of the virus were not limited to just Plaintiffs.  (ECF No. 35, PageID.189).

The second reason why this claim fails is Plaintiffs lack standing.[2]  This issue is the basis for dismissing similar claims in the 2022 lawsuit.  As stated there, "[t]o have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing.''  *Transunion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).  Despite Plaintiffs' allegations about being at risk for Covid-19 complications, they do not allege that they caught the virus while in Michigan.  Had they, the claim would still fail because placing the blame on Defendants' conduct, in the early days of the global pandemic, is too tenuous.

---

[2] Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte.  Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007).

3.      Defendants City of Warren, Dwyer, Fouts, and Reichling

Defendants City of Warren, Dwyer, Fouts, and Reichling argue they should be dismissed because Plaintiffs pleaded no facts establishing that they violated a federal or state law.  They point out that Plaintiffs use the universal "Defendants" to attempt to state claims against all defendants, but made no specific, non-conclusory allegations against them.  Plaintiffs did not address this argument in response.

It is true that Plaintiffs did not name either of these defendants in Counts One through Five of the amended complaint.  In Count Six, Plaintiffs stated that "Defendants" actions exposed them to a State Created Danger.  (ECF No. 29, PageID.99).  The undersigned has already recommended that the "state created danger" claims be dismissed.  Count Seven, for intentional infliction of emotional distress, names no Defendants, so presumably it is addressed to all Defendants.

Allegations that reference these defendants by name are conclusory. Plaintiffs allege that the City of Warren "is being sued for 'failure to train' [its] employees."  (ECF No. 29, PageID.88).  To successfully sue a municipality for failure to train, Plaintiffs needed to address the "adequacy of the training program in relation to the tasks the particular officers must perform."  *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).  There are no such allegations in the complaint. The City of Warren should be dismissed.

They allege that Warren Mayor Fouts acted in conspiracy with the other individual defendants to violate Plaintiff's constitutional rights. (ECF No. 29, PageID.87). To state a conspiracy claim under § 1983, a plaintiff must show, not merely conclude: (1) a single plan, (2) that the alleged co-conspirator shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy that deprived the plaintiff of his or her civil rights. *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6thCir. 1985). Merely stating that the defendant was part of a conspiracy to violate the plaintiff's rights does not satisfy the pleading standards and fails to state a conspiracy claim. Plaintiffs also allege that Fouts issued an emergency declaration on February 20, 2020, about Covid-19. (*Id.* at PageID.90). This fact does not establish any wrongdoing. They later allege that Fouts issued a news release about bad landlords, which Plaintiffs allege is part of the conspiracy. (*Id.* at PageID.96). This allegation does not state a conspiracy claim, nor does the issuance of a news release, without more facts, establish entitlement to any relief. Fouts should be dismissed.

Defendant Warren Police Commissioner Dwyer is included in the same conclusory statements about being part of a conspiracy to violate Plaintiffs' rights; the conspiracy claim should be dismissed. (*Id.* at PageID.87). Plaintiffs also state that Dwyer was among ten other defendants who failed to find out about whose cars were parked at the property on July 7, 2021, or whether the cars were

operable. (*Id.* at PageID.96). First, it is unclear how failure to discover the ownership of the vehicles entitles Plaintiffs to relief considering their claim is that the order permitting taking the cars specified that only inoperable cars could be taken. Second, the allegation against the Commissioner of the Warren Police Department that he failed to figure out whether the vehicles were operable appears to be a claim that he violated the order to tow inoperable vehicles. As much as this is a federal claim, it sounds in supervisory liability. Plaintiffs allege that Dwyer is sued in his individual capacity for failure to train his police officers. (*Id.* at PageID.88-89). This assertion not only lacks factual support about a faulty training program, but it also appears to be an attempt to sue Dwyer for the actions of his subordinates. To establish supervisory liability, a plaintiff must establish that the supervisory official "encouraged the specific incident of misconduct or in some other way directly participated in it." *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008) (citation and quotation marks omitted). There are no such allegations in the amended complaint. Dwyer should be dismissed.

Plaintiffs mention that Fouts and Dwyer, as policymakers, had a custom and policy of violating constitutional rights in their response brief. (*See, e.g.*, ECF No. 40, PageID.407). Even if the allegations made for the first time in the response brief were sufficient to state a claim to relief, which they are not, statements in a response brief are not part of the complaint and are not considered here.

11

*See Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn*., 502 F. App'x 523, 541-42 (6th Cir. 2012) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).") (citation omitted).

Lastly, as to Defendant Captain Reichling, Plaintiffs allege he participated in the conspiracy with all other defendants, he was at the scene when the two cars were towed and, like Dwyer, he did not nothing to ascertain the ownership of the cars. (ECF No. 29, PageID.87, 89, 96). As mentioned, the conspiracy allegation is conclusory. Riechling's presence at the scene and failure to learn of ownership, without more, does not illuminate a claim to relief under the Fourth or Fourteenth Amendments. To the extent that Plaintiffs seek to hold Reichling responsible for the actions of subordinates, these allegations are insufficient as explained above. Reichling should be dismissed.

4.      Entry Into Plaintiffs' Basement Residence – Claim Two

Plaintiffs allege that the remaining Defendants' search of the basement residence at Thrower's property without a warrant on March 11, 2020, violated the Fourth and Fourteenth Amendments. In the opening brief, Defendants argue that this claim is time barred. Plaintiffs alleged they found out about the search on April 23, 2020, but filed the lawsuit on July 5, 2023, beyond the statute of limitations. (ECF No. 35, PageID.185-86).

Plaintiffs' response brief moves between claims and arguments without much structure, making it difficult to understand their response to Defendants' motion.  That said, in their response, Plaintiffs argue that the search was illegal—they did not give permission to enter the basement residence and Defendants did not obtain an administrative warrant to enter the property.  (ECF No. 40, PageID.406-07).  Next, they state that Thrower did not learn of the illegal entry until May 22, 2020, and Nelson did not become aware until June 22, 2020.  (*Id.* at PageID.410).  They contend that the "covid tolling statute" in effect from March 10, 2020, through June 22, 2020, tolled the three-year statute of limitations by 102 days.  (*Id.* at PageID.412-13).  Thus, they posit that the statute of limitations began to run on June 22, 2020.  But then they contend that the discovery rule would apply to toll the statute further.  Contrary to their earlier representations, Plaintiffs now say they found out about the illegal entry on August 21, 2020.  (*Id.* at PageID.413).  This would make their July 5, 2023, timely.  They also appear to assert that the continuing violations doctrine applies as well.  (*Id.* at PageID.415).

In reply, Defendants argue that even if the Michigan Supreme Court's Administrative Order tolling limitations periods for Covid-19 applied to the claims, it would only toll the claim until June 21, 2023, so the July 5, 2023, complaint is

untimely.[3]  (ECF No. 43, PageID.518).  Defendants did not address the

inconsistency in Plaintiffs' argument about when they discovered the allegedly

illegal entry.  They next argue that even if the claim is not time-barred, it should be

dismissed for failure to state a claim.  They insist that the tenant's consent to the

search was sufficient to permit them entrance into the residence without a warrant.

(*Id.* at PageID.518-19).

The undersigned will first address the argument, raised in reply, that the

warrantless search was lawful because the co-tenant gave permission and entrance

into the basement residence.  It is dubious whether the Court can even consider this

argument given that it was raised for the first time in reply to arguments about the

statute of limitations.  Plaintiffs had no chance to respond to this argument.  As a

general rule, issues raised for the first time in a reply brief are waived. *Scottsdale*

*Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).  But even if the Court were

to consider the argument, which it is not, it would be a losing one.

"To the Fourth Amendment rule ordinarily prohibiting the warrantless entry

of a person's house as unreasonable per se, one 'jealously and carefully drawn'

exception recognizes the validity of searches with the voluntary consent of an

---

[3] The Michigan  Supreme Court issued administrative orders tolling all Michigan statutes of limitations for 102 days during the COVID-19 pandemic in 2020.  *See Carter v. DTN Mgmt. Co.*, 2023 WL 439760, at *3 & n.2 (Mich. Ct. App. Jan. 26, 2023) (discussing the Michigan Supreme Court's tolling orders and noting that they excluded the counting of days starting on March 10, 2020, until June 20, 2020).

individual possessing authority." *Georgia v. Randolph*, 547 U.S. 103, 109 (2006) (quoting *Jones v. United States,* 357 U.S. 493, 499 (1958)) (internal citations omitted). A co-occupant who shares common authority over the premises to be inspected can grant consent for a search of that area. *Id.* This means that persons who share living space may consent to a search of common areas in the home, but may not consent to the search of the other occupant's private space, such as a bedroom. *See United States v. Tapia-Rodriguez*, 968 F.3d 891, 895 (8th Cir. 2020) ("But a co-tenant's unrestricted consent to search leased property will not justify a warrantless search of a room 'set aside for [the defendant's] own private use.'") quoting *United States v. Heisman*, 503 F.2d 1284, 1288 (8th Cir. 1974) (reversing conviction because, viewed objectively, the consenting co-tenant did not have "joint access or control" over defendant's room)).

Considering the complaint allegations as true, Plaintiffs' note that the tenant knew she could only access the basement in an emergency.

Defendants' reliance on *Georgia*, 547 U.S. at 109, as a case factually analogous to the allegations raised here is misplaced. There, a co-occupant consented to search the premises without a warrant, but the other occupant was also present and declined consent to the search. The officers searched the property anyway. That search was held to be invalid as to the non-consenting occupant. *Id.* at 120. That is not what happened here, according to Plaintiffs. Plaintiffs' absence

from the house did not give the co-occupant authority over the entire premises.  So

Defendants' argument that they had authority to conduct the warrantless search is

not well taken.

Turing to the statute of limitations, Michigan has a three-year statute of

limitations for claims brought under 42 U.S.C. § 1983.  This statute of limitations

applies to the Fourth and Fourteenth Amendment claims.  The statute of limitations

was tolled in Michigan between March 10, 2020, and June 20, 2020.  *See*

*Gottsleben v. Informa Media, Inc.*, 2023 WL 4397226, at *3 (W.D. Mich. July 7,

2023).  Plaintiffs' unlawful search claim would begin to be counted, at the earliest,

on June 21, 2020.  A claim that accrued during June 2020 needed to be filed in

June 2023, so Plaintiffs' July 5, 2023, complaint would be untimely.

Defendants did not address Plaintiffs' changing facts in their response brief.

For the first time in their brief, they said they learned of the unlawful search not in

April 2020, but in August 2020.  (ECF No. 40, PageID.413).  Plaintiffs did not

explain the change in story from the amended complaint.[4]  As stated above,

allegations made in a response brief are not part of the complaint and cannot be

considered as facts establishing a claim.  Plaintiffs were on notice that their

amended complaint states they became aware of the search in April 2020, yet did

---

[4] They also did not mention the search of the basement residence in their affidavits.
(ECF No. 40, PageID.465-69).

not move to amend the complaint to change the allegation.[5]  Plaintiffs' litigation

history gives the Court confidence that they are aware of the procedures for

amending their complaint as they have successfully done so often.

Because their amended complaint alleges that they became aware of the

search in April 2020, the limitations period began to run at the expiration of the

Covid-19 tolling period in June 2020.  The continuing violations doctrine does not

save the claim.  "A continuing violation is occasioned by continual unlawful acts,

not continual ill effects from an original violation." *Broom v. Strickland*, 579 F.3d

553, 555 (6th Cir. 2009) (punctuation modified).  The allegedly unlawful search in

March 2020 and the allegedly illegal seizure of vehicles in July 2021 are not

continual unlawful acts.  Plaintiff's July 2023 complaint about the unlawful search

is time-barred, and the claim should be dismissed.

5.     Towing Operable Vehicles – Claim Three

In Claim Three, Plaintiffs allege that Defendants Scott, Gauss, Cummins,

Badalamente, Kijewski, Warack, Murphy, Lipa, Michaels, Trembeth, and Ross

unlawfully towed their two vehicles from the property on July 7, 2021.  This

instance of towing the vehicles was allegedly unlawful because the court order to

---

[5] They assert that they sought to amend their complaint in their earlier case at Case No. 22-10918 to add the unlawful search claim, but review of the motions to amend does not show that they sought to amend their complaints to add this claim or that they found out about the search later in 2020.

tow the cars was issued after the cars were towed and it was limited to inoperable vehicles, but both cars were operable.  (ECF No. 29, PageID.97-98).  Plaintiffs also allege the order was issued without permitting them an opportunity to be heard. (*Id.* at PageID.98).

Defendants assert that is it unclear from the allegations who towed the vehicles, who failed to give Plaintiffs notice, and who violated the July 7, 2021, order.  They contend that the lack of specific pleading does not rise the level of plausibility, so the claim should be dismissed.  (ECF No. 35, PageID.186-87).

Plaintiffs offer little clarity on this claim in the response brief.  Aside from restating (and sometimes copying) the complaint allegations, they add that Defendants Michaels, Trembath, and Ross conferred with non-defendant Judge Chumra to obtain a misdemeanor warrant on July 7, 2021, and that Defendants Reichling and Dwyer and an unknown officer ordered that the cars be towed. (ECF No. 40, PageID.421-23).  In concluding their argument, they again list twelve defendants as responsible for towing the vehicles.  (*Id.* at PageID.423).

The only defendants named in Claim Three mentioned in the response are Trembath and Michaels.  For the remaining Defendants there is no articulation of how they were involved in towing the vehicles.  "When suing an individual actor . . . for constitutional violations under § 1983, a plaintiff must demonstrate that the actor 'directly participated' in the alleged misconduct, at least by encouraging,

implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013).  Indeed, "it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Jack-Bey v. Michigan Dep't of Corr.*, 2014 WL 1255910, at *5 (W.D. Mich. Mar. 26, 2014) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis omitted)).  True, it is not impermissible to refer to Defendants collectively in a complaint, but generic or blanket allegations about "defendants" or lumping defendants together, without accompanying allegations showing how each of those defendants violated the Constitution or federal laws, is insufficient.  *See Rouse v. Washington*, 2021 WL 2434196, at *8 (E.D. Mich. June 15, 2021).

Because of the manner of Plaintiffs' pleading, it is impossible to tell whether, for instance, it is plausible that Defendant Gauss violated the Fourth or Fourteenth Amendment as it relates to towing the two vehicles.  We do not know what Gauss did or did not do.  And while additional facts in a response brief are not considered here, not even in the response do we learn what Gauss did or did not do to violate Plaintiffs' rights.  At most, from the response brief, we know that Trembath and Michaels spoke with Judge Chumra about the order to tow the

19

vehicles.  We do not know if Trembath and Michaels were also present at the scene, or if they knew the vehicles were towed before the order was signed, or if they knew the vehicles were operable.  Conferring with a judge about a warrant, without more, does not violate the Constitution or federal law.

Plaintiffs are the masters of their complaint.  The Court does not create additional allegations to save a claim in a complaint.  This claim should be dismissed without prejudice to Plaintiffs' ability to file an amended complaint in which they expressly allege personal involvement by the individuals named.

### 6.    Claims Four and Five Against Defendant Scott

Plaintiff Thrower alleges that Scott attempted a citizen's arrest for misdemeanor housing violations on July 8, 2021, and in doing so committed assault, battery, and kidnapping, and violated the Fourth, Fifth, and Fourteenth Amendments.  More specifically, Thrower alleges that Scott restrained him, spat on him, and went through his bag.  (ECF No. 29, PageID.98).  He says that Scott told him during the interaction that he was "doing a citizens arrest."  (*Id.* at PageID.95).  Warren police officers arrived at the scene and arrested Plaintiff for housing violations.

Defendant Scott argues that the claim should be dismissed because Plaintiff did not show the arrest was made without probable cause and because he did not arrest Plaintiff, the Warren Police Department did.  He also argues that the assault,

battery, and kidnapping claims should be dismissed because they consist entirely of legal conclusions.  (ECF No. 35, PageID.187-88).

To begin with, the undersigned is unconvinced by Scott's argument that the claim fails because he was not the person who ultimately arrested Thrower.  The argument is not well-taken because the allegations establish that Scott restrained Plaintiff, telling Plaintiff he was conducting a citizen's arrest, and it can be inferred he held Plaintiff until the Warren police arrived to take Plaintiff into custody.  He cites no authority to suggest that he could only be liable for his actions if he took Plaintiff into custody.

Plaintiff alleges that Scott's conduct violated both federal and state law.  As to any federal violation, Plaintiff's claim of unlawful arrest or seizure is properly analyzed under the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

False arrest provides the framework closest to the conduct Plaintiff contests. *See Tsao v. Dessert Palace, Inc.*, 698 F.3d 1128, 1142 (9th Cir. 2012) (evaluating claim of unlawful citizens' arrest under framework for Fourth Amendment false arrest after finding citizen arrester to be state actor).  To prevail on a claim of

unlawful arrest, a plaintiff must demonstrate that the officer lacked probable cause to arrest him or her. *Halasah v. City of Kirtland, Ohio*, 574 F. App'x 624, 629 (6th Cir. 2014); *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008) (unreasonable seizure); *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (false arrest). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Sykes v. Anderson,* 625 F.3d 294, 306 (6th Cir. 2010).

As Scott noted, Plaintiffs did not allege that the citizens' arrest (or his ultimate arrest by police officers) was affected without probable cause. What is more, Thrower alleges his arrest by the Warren Police Department was pursuant to misdemeanor housing violations, suggesting there was probable cause for the arrest. *See Devenpeck v. Alford*, 543 U.S. 146, 153, 155 (2004) ("[The officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."). In their response brief, Plaintiffs acknowledge that there was a warrant for Plaintiff's arrest for housing violations. (ECF No. 40, PageID.422). Plaintiffs were on notice of the lack of allegations about probable cause in the amended complaint, yet did not seek to amend their complaint. So neither the allegations nor the briefing establishes that he was arrested without probable cause. The undersigned therefore recommends that Thrower's federal claim about the interaction with Scott be dismissed.

7.    Remaining State-Law Claims

Having recommended that all the federal claims be dismissed, the undersigned further recommends that the Court decline supplemental jurisdiction over Plaintiffs' state-law claims.  Under 28 U.S.C. § 1367, a district judge may decline to exercise supplemental jurisdiction  over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction. . . ."  28 U.S.C. § 1367(c)(3).  "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims [.]"  *Musson Theatrical, Inc. v. Express Corp*., 89 F.3d 1244, 1254-55 (6th Cir. 1996).  Indeed, the Sixth Circuit has repeatedly advised that the district courts should not exercise supplemental jurisdiction over state-law claims where all original jurisdiction claims have been dismissed.  *See*, *e.g.*, *Brown v. Cassens Transp. Co*., 546 F.3d 347, 363 (6th Cir. 2008).  The undersigned recommends Plaintiffs' state-law claims be dismissed without prejudice.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the motion to dismiss (ECF No. 35) be **GRANTED** and that all federal claims be **DISMISSED**, but that the claims about the allegedly unlawful seizure of the two vehicles be **DISMISSED WITHOUT PREJUDICE**.  The undersigned further

**RECOMMENDS** that the state-law claims be **DISMISSED WITHOUT PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

    Date:  April 9, 2024.          <u>s/Curtis Ivy, Jr.</u>
                                             Curtis Ivy, Jr.
                                             United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

    The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on April 9, 2024.


                                       <u>s/Sara Krause</u>
                                       Case Manager
                                       (810) 341-7850